UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MHC FINANCING LIMITED PARTNERSHIP TWO,<br><br>                              Plaintiff,<br><br>     vs.<br><br>CITY OF SANTEE; and DOES 1 through 100,<br><br>                              Defendants. | CASE NO. 07CV849-IEG (WVG)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>[Doc. No. 46] |

     In this action brought under 42 U.S.C. § 1983, Plaintiff MHC Financing Limited Partnership Two ("MHC") has asserted takings and due process claims against Defendant City of Santee ("the City"). Presently before the Court is the City's motion to dismiss MHC's First Amended Complaint ("FAC") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). MHC filed an opposition, and the City filed a reply. The Court heard oral argument on September 17, 2010. For the reasons stated herein, the Court **GRANTS** the City's motion to dismiss.

## BACKGROUND

     On or about November 27, 1998, the City of Santee ("the City") began enforcing Ordinance 381, a mobile home rent control ordinance that was adopted by the City Council pursuant to an initiative petition. (FAC ¶ 7.) Ordinance 381 restricted rent increases more severely than the prior rent control ordinance, Ordinance 324/329. (Id.) Shortly after the adoption of Ordinance 381, the

City was alerted that the version of Ordinance 381 adopted by the City Council differed from the petition circulated to the voting public. (FAC ¶ 8.) Accordingly, on or about January 24, 2001, the City adopted Ordinance 412 ("Original Ordinance 412"), which was intended to cure the error in the adoption of Ordinance 381. (FAC ¶ 9.) The City began enforcing Original Ordinance 412 on February 23, 2001. (Id.) Original Ordinance 412 expressly provided that it was retroactive to the effective date of Ordinance 381.

<u>MHC Challenges Original Ordinance 412 in State Court</u>

On October 29, 2001, Plaintiff MHC, the owner and operator of the Meadowbrook Mobilehome Park ("Meadowbrook"), filed an action styled MHC Financing Limited Partnership Two v. City of Santee, San Diego County Superior Court, Case No. GIC 777094 (hereinafter, "Downtown State Court Action"), against the City seeking a judicial declaration that both Ordinances 381 and 412 were null and void because Ordinance 381 and Original Ordinance 412 were enacted in violation of California law. (FAC ¶ 10.) MHC reserved all federal claims pursuant to <u>England v. Louisiana Board of Medical Examiners</u>, 325 U.S. 411 (1964). (Id.) MHC also contended the City's enforcement of Ordinances 381 and Original Ordinance 412 impermissibly chilled MHC's right of petition for rent increases. (Id.)

Judge Haden of the San Diego County Superior Court agreed with MHC, finding that the City illegally adopted Ordinances 381 and Original Ordinance 412 and the ordinances were thus void. (FAC ¶ 12.) Judge Haden also found that the City's enforcement of assessments and fee-shifting provisions of Ordinances 381 and Original Ordinance 412 chilled MHC's right to petition for rent increases in violation of the California Constitution. (Id.)

On appeal, the California Court of Appeal found that the City could retroactively apply Original Ordinance 412 to the effective date of Ordinance 381, and thus reversed Judge Haden's determination that Original Ordinance 412 was void. (FAC ¶ 14.) The Court of Appeal affirmed Judge Haden's decision in all other respects, including his finding that the assessment and fee-shifting provisions of Ordinance 381 and Original Ordinance 412 had a chilling effect on MHC's right to petition for rent increases. (Id.) The Court of Appeal held, however, that those provisions could be severed from the remainder of the ordinance. The Court remanded the case to determine

(1) whether MHC suffered injury as a result of any differences between Original Ordinance 412 and Ordinance 381 and the retroactive application of Original Ordinance 412 to the effective date of Ordinance 381; (2) whether MHC suffered any injury as a result of the assessment and fee-shifting provisions found unconstitutional; and (3) the proper remedy for such injury. (Id.)

In August and September 2007, Judge Enright of the San Diego Superior Court held a bench trial in accordance with the Court of Appeal's 2005 remand order. (FAC ¶ 22.) During the course of that proceeding (hereinafter, the "Remand Proceeding"), MHC claimed it had been injured by the City's enforcement of the chilling provisions declared invalid by the Court of Appeal and from the City's retroactive application of the differences between Ordinances 381 and 412. (FAC ¶ 24.) Those injuries included (1) denial of market rents; and (2) denial of the right to discretionary rent increase process. (Id.) The City disputed any damages were owed, arguing the Commission would not have awarded MHC any rent increases because MHC had failed to pay annual assessments. (FAC ¶ 26.) Judge Enright determined that MHC failed to establish any legally remediable injury. See Pl.'s Opp'n at 11.

MHC's First Federal Challenge to Original Ordinance 412

In 2001, one month after filing the "Downtown State Court Action," MHC commenced an action in the Southern District of California before Judge Benitez, challenging Original Ordinance 412 on federal and state takings, substantive due process, and equal protection grounds ("2001 Federal Action"). (Def.'s RJN, Ex. B.) MHC asserted Original Ordinance 412 caused a taking of its property without compensation and without substantially advancing a legitimate purpose in violation of the Fifth Amendment of the United States Constitution. (Id.) MHC also alleged that Original Ordinance 412 constituted a taking for private use in violation of the public use clause of the Fifth Amendment of the Constitution. (Id.)

Judge Benitez granted summary judgment in favor of the City, holding that MHC's as-applied challenges to Original Ordinance 412 were not ripe, that MHC's facial claims were barred by the statue of limitations for 42 U.S.C. § 1983 claims, and that MHC's claims were also moot because the California Superior Court had enjoined the City from enforcing the ordinance. (Def.'s RJN, Ex. B.) In reference to MHC's as applied claims, Judge Benitez noted: "[s]ince MHC has

1  not yet pursued compensation for its as-applied 'taking' it has not yet been denied just
2  compensation and the as-applied takings claim is not yet ripe for decision." (See id. at 6.)
3       On appeal to the Ninth Circuit, MHC argued that its claims were ripe because, *inter alia*, it
4  allegedly already sought full compensation through its litigation of the "Downtown State Court
5  Action." (Def.'s RJN, Ex. J.) The Ninth Circuit disagreed and affirmed. (Def.'s RJN, Ex. K.)
6  <u>Introduction of Revised 412 Ordinance</u>
7       On or about December 15, 2005, the City's staff presented the Commission an ordinance
8  entitled "Ordinance 412-Revised by Court Decision." (FAC ¶ 16.) It is this "Revised Ordinance
9  412" that is the subject of this suit.
10      Revised Ordinance 412 deleted the provisions that the State Court of Appeal had
11 specifically identified as unconstitutionally chilling MHC's ability to request rent increases. (FAC
12 ¶ 17.) It also deleted certain provisions that neither Judge Haden (the judge who first declared
13 parts of the ordinance unconstitutional in the "Downtown State Court Action") nor the Court of
14 Appeal identified by number, including section 2.44.170(F)(1) and the fee-shifting provision
15 2.44.100(c)(3). (Id.) Last, Revised Ordinance 412 also changed a cross reference contained in
16 Section 2.44.100(c)(2) of the ordinance from 2.44.110(C) to Section 2.44.100(c)(1). (FAC ¶ 19.)
17 This was apparently to correct a typo in the original ordinance. The original provision read: "[i]n
18 the event a park owner believes that the net operating income will be less than provided for in
19 section 2.44.110(C)(1) a park owner shall be entitled to elect instead of the annual permissible
20 adjustment, to file an application with the commission for an annual adjustment . . . ." (Id.)
21 Original Ordinance 412 did not have a "Section 2.44.110(C)(1)." It did, however, have a section
22 2.44.100(C)(1). (FAC ¶ 20.)
23 <u>A State Court Proceeding Initiated by the City</u>
24      In December 2003, sometime after both the Downtown State Action and the 2001 Federal
25 Action were filed, the City filed an action in the East County Division of the San Diego Superior
26 Court (the "East County State Court Action") to enjoin MHC from violating Ordinance 329 (the
27 original ordinance which was supposedly supplanted by Ordinance 381 and Original Ordinance
28 412). (Def.'s RJN, Ex. M.) In 2006, MHC filed a cross-complaint for federal and state

constitutional takings and substantive due process claims under 42 U.S.C. § 1983 (the same claims they alleged in Judge Benitez's court and the same claims they allege here). (Def.'s RJN, Exs. L, N.)

On July 27, 2007, Judge Sturgeon heard a motion for summary judgment by the City on MHC's takings and due process claims. (Def.'s RJN, Ex. O.) The City asserted MHC's as applied takings and due process claims were not ripe, and that MHC's facial takings and due process causes of action were barred by the statute of limitations. (Id.) Judge Sturgeon agreed and granted summary judgment in favor of the city on August 6, 2007. In an opinion that became final on June 23, 2010, the California Court of Appeal unanimously affirmed Judge Sturgeon's ruling in its entirety. (Def.'s RJN, Ex. G.)

MHC's Current Complaint

On October 29, 2007, MHC filed its First Amended Complaint in this Court. (Doc. No. 14.) MHC alleges that Revised Ordinance 412, both facially and as applied, violates the Fifth Amendment's Takings Clause, and that the City's enforcement of Revised Ordinance 412 constitutes a denial of both substantive and procedural due process. (Id.)

On November 15, 2007, the City filed a motion to dismiss for lack of subject matter jurisdiction. (Doc. No. 18.) However, before ruling on the motion to dismiss, on February 28, 2008, the Court ordered a stay of the proceedings pending a final judgment in the East County State Court Action. (Doc. No. 31.) Accordingly, the Court denied the motion to dismiss without prejudice on August 15, 2008, holding that it was moot. (Doc. No. 33.) On November 24, 2009, the Court ordered a further stay pending final judgment in the East County State Court Action. (Doc. No. 41.) On July 28, 2010, the Court lifted the stay and directed the City to file a motion to dismiss by August 20, 2010. (Doc. No. 45.)

The City filed the present motion to dismiss ("Def.'s Mot.") on August 17, 2010. (Doc. No. 46.) MHC filed an opposition ("Pl.'s Opp'n"), (Doc. No. 48), and the City filed a reply, (Doc. No. 54).

///

///

# DISCUSSION

## I. Legal Standards

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows for a motion to dismiss where the court lacks subject-matter jurisdiction. Because "[f]ederal courts are courts of limited jurisdiction," the Court "presume[s] that a cause [of action] lies outside this limited jurisdiction[.]" Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). A Rule 12(b)(1) motion "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989). Thus, the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims. Id. Because the plaintiff bears the burden of establishing subject matter jurisdiction, no presumption of truthfulness attaches to the allegations of the plaintiff's complaint, and the Court must presume that it lacks jurisdiction until the plaintiff establishes jurisdiction. Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

Whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause of article III of the federal Constitution. St. Clair, 880 F.2d at 201 (citing Unity Ventures v. County of Lake, 841 F.2d 770, 774 (7th Cir. 1988).

### B. Federal Rule of Civil Procedure 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) (2009). A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted). A court need not accept "legal conclusions" as true. Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

## II. Analysis

### A. Timeliness of MHC's As-Applied Takings and Due Process Claims[1]

In determining whether takings claims are properly before the Court, first the Court must determine whether the claim is ripe and then determine whether the claim is barred by the statute of limitations. Ventura Mobilehome Cmtys. Owners Ass'n v. City of Buenaventura, 371 F.3d 1046, 1052 (9th Cir. 2004) (citing Hacienda Valley Mobile Estates v. City of Morgan Hill, 353 F.3d 651, 655 (9th Cir. 2003).

In Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172, 186, 194 (1985), the Supreme Court articulated a two-prong analysis for determining whether a takings claim is ripe. First, the claimant must obtain "a final decision regarding the application of the zoning ordinance . . . to its property." Id. at 186. "Until there has been a 'final, definitive position regarding' how the regulations will be applied to the land, a court cannot determine whether a compensable taking has occurred." Hensler v. City of Glendale, 876 P.2d 1043, 1049 (Cal. 1994) (citing Williamson County, 473 U.S. at 191). Second, the claimant must have "unsuccessfully attempted to obtain just compensation through the procedures provided by the

---

[1] Substantive due process claims are "subject to the same ripeness standards that are applied generally to constitutional challenges to land use regulations." St. Clair v. City of Chico, 880 F.2d 199, 202-04 (9th Cir. 1989).

state." Williamson County, 473 U.S. at 191. Until just compensation is denied, there has been no constitutional violation. See id. at 194 n.13; Levald, Inc. v. City of Palm Desert, 998 F.2d 680, 687 (9th Cir. 1993). A plaintiff need not comply with these requirements if state remedies would be inadequate or futile. Los Altos El Granada Investors v. City of Capitola, 97 Fed. Appx. 698, 700 (9th Cir. 2004) (quoting Williamson County, 473 U.S. at 197). However, the futility exception is narrow, and mere uncertainty does not establish futility. Del Monte Dunes at Monterey, Ltd. v. City of Monterey, 920 F.2d 1496, 1501 (9th Cir. 1990).

The City maintains that MHC has not satisfied either prong of Williamson County, and that MHC's failure to allege that it applied for and was denied a rent increase or modification precludes it from relying on the futility exception to the state compensation requirement. See Def.'s Mot. at 11-15. MHC does not contend that it sought a rent increase or modification prior to filing this action or that it sought relief through a Kavanau adjustment, the state procedure designed to provide compensation for rent control losses. See generally Pl.'s Opp'n. Rather, MHC relies on the Remand Proceeding in arguing that its claims are ripe. MHC argues that the City's litigation posture in the Remand Proceeding constitutes a final decision regarding the application of Revised Ordinance 412 to its property. See id. at 11-12. Likewise, MHC argues that it sought compensation in the Remand Proceeding.[2] See Pl.'s Opp'n at 13.

As an alternative, MHC argues that it should not be required to satisfy the Williamson County requirements. As to the first requirement, MHC contends that its failure to obtain a final decision cannot be a bar here due to the City's misconduct. See id. at 12. According to MHC, the City took inconsistent positions in the Remand Proceeding and determined MHC "was not eligible under its made-for-trial standard."[3] Id. As to the second requirement, MHC argues that seeking

---

[2] MHC also asserts that it sought and was denied compensation in the East County State Court Action because the trial court dismissed MHC's takings claims on ripeness and statute of limitations grounds. See Pl.'s Opp'n at 13. In other words, MHC somehow reasons that its previous failure to ripen its claims can serve as the basis for ripening its claims in this action. The Court disagrees and concludes MHC did not satisfy the second prong of Williamson County in the East County State Court Action.

[3] MHC also contends the City is enforcing provisions that unconstitutionally "chill" MHC's right to apply for a rent increase and will not accept a rent increase petition from MHC. See Pl.'s Opp'n at 12. However, that argument appears to be moot now that MHC has actually applied for a

1 compensation through state procedures would be futile. MHC asserts it would be futile because
2 the City "has already indicated that it will not accept a rent increase petition from MHC, which is
3 the first step of the Kavanau procedure," and because the City "has applied" the Ordinance to deny
4 a Net Operating Income Adjustment[4] unless a parkowner's net operating income is less than 50%
5 of its gross income. Pl.'s Opp'n at 14.

   The Court turns to the Williamson County requirements, noting at the outset that several
courts have held takings claims unripe based on a claimant's failure to apply for a rent increase.
See Yee v. City of Escondido, 503 U.S. 519, 534 (1992) (agreeing with respondent that as applied
regulatory taking claim was unripe because petitioners had not sought rent increase); Ventura
Mobilehome Cmtys. Owners Ass'n v. City of San Buenaventura, 371 F.3d 1046, 1053 (9th Cir.
2004) (holding plaintiff's claim unripe due, in part, to its failure to apply for a rent increase);
Montclair Parkowners Ass'n v. City of Montclair, 90 Cal. Rptr. 2d 598, 602 n.2 (Cal. Ct. App.
1999) (quoting Sandpiper Mobile Village v. City of Carpinteria, 12 Cal. Rptr. 2d 623, 627 (Cal. Ct.
App. 1992) ("Because Sandpiper has not alleged that it has attempted to change the use of its park
or to apply for a rent increases, its regulatory taking claim is not ripe")). In contradictory fashion,
MHC argues that the City will not accept a rent increase petition and, at the same time, that it has
now applied for a rent increase. See Pl.'s Opp'n at 12-13. MHC filed a formal petition the same
day it filed its opposition to the present motion in order to "eliminate any threshold impediment to
its futility argument." See id. at 13. MHC does not contend that the City refused to accept its
petition, that the City has issued a final decision on the petition, or that the petition itself satisfies
the final decision requirement. See generally id.

   Instead, MHC posits the novel theory that the City's position in the Remand Proceeding
that MHC was ineligible for a rent increase is the functional equivalent of a formal denial of a
petition for rent increase, and thus it satisfies the final decision requirement. See id. at 11-12. Yet,
incongruously, MHC also contends that the City adopted a "made-for-trial" standard and that

---

rent increase. See id. at 13.

[4] According to MHC, a Net Operating Income Adjustment ("NOI Adjustment") is one of two forms of rent increase or "adjustment" for which a park owner may apply. The other is a Special Adjustment. Pl.'s Opp'n at 3.

1  "MHC would have been eligible for an NOI Adjustment under the correct standard, as reflected in
2  Revised Ordinance 412." In other words, according to MHC, the City's litigation posture
3  represents both an authentic final decision and inauthentic gamesmanship. Taken together, MHC's
4  assertions counsel against ascribing finality to any "decision" the City made in connection with the
5  Remand Proceeding.

6  MHC also relies on the Remand Proceeding satisfy the second Williamson County
7  requirement. At the outset of the Downtown State Court Action, MHC expressly reserved its
8  federal claims under England v. Louisiana Board of Medical Examiners, 325 U.S. 411 (1964), and
9  asserted a variety of state court claims. FAC ¶ 10. Specifically, MHC asserted violations of the
10 Elections Code, the California Constitution's equal protection clause, the Brown Act, Article
11 XIIID of the California Constitution, and the right to petition under article I, section 3 of the
12 California Constitution. See Def.'s RJN, Ex. A at 6. On remand, Judge Enright expressly
13 construed the Court of Appeal as having limited MHC's remedy to the causes of action MHC had
14 asserted at the outset of the action. See Pl.'s RJN, Ex. L at 8 (noting "MHC's claims that
15 Ordinances 381 and 412 are unconstitutional are beyond the scope of remand"). Judge Enright
16 observed, "[i]t is undisputed that MHC failed to raise takings and due process claims in this action.
17 Instead, MHC elected to pursue federal takings and due process claims in federal court." See Pl.'s
18 RJN, Ex. L at 9. Accordingly, contrary to MHC's assertions, the issues in the Remand Proceeding
19 were distinct from those raised here, and Judge Enright expressly declined to consider whether
20 MHC was entitled to just compensation in the Remand Proceeding.

21  Lastly, pursuit of state compensation would not be futile. The Ninth Circuit has expressly
22 held the Kavanau procedure is "an adequate procedure for seeking just compensation." Equity
23 Lifestyles Props., Inc. v. County of San Luis Obisbo, 548 F.3d 1184, 1192 (9th Cir. 2008). MHC's
24 assertion that the City will deny its petition for rent increase is mere speculation, especially when
25 juxtaposed with its contention that it is "eligible for a NOI Adjustment under the correct standard,
26 as reflected in Revised Ordinance 412." Pl.'s Opp'n at 12. At most, MHC's position reflects
27 uncertainty, and "uncertainty does not equal futility." Manufactured Home Cmtys., Inc., v. City of
28 San Jose, 420 F.3d 1035. The Court concludes MHC's as-applied takings and substantive due

process claims are not ripe.[5]

Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** MHC's as applied takings and due process claims.

### B.  Timeliness of MHC's Facial Taking Claims

As a preliminary matter, the Court of Appeal's holding in the East County State Court Action precludes MHC from relitigating the issue of whether the City staff's presentation of Revised Ordinance 412 to the Commission constituted an enactment of a new ordinance subject to judicial review.  In the East County State Court Action, the Court of Appeal expressly held that "presentation by the City's staff to the Commission of [Revised Ordinance 412] does not constitute an enactment giving rise to a new limitation period" and the City "has not severed or otherwise altered any provisions contained in Ordinance 412 since its enactment on January 24, 2001." Def.'s RJN, Ex. G at 37 (internal quotation marks omitted).  As a consequence, MHC cannot assert a facial challenge to Revised Ordinance 412 and the Court evaluates MHC's facial challenges against Original Ordinance 412.

The Court turns to whether MHC's facial challenges to Original Ordinance 412 are timely.[6] MHC has also asserted a Nollan/Dolan claim,[7] which relies on the theory that Ordinance 412 does not "substantially advance" any government purpose.  FAC ¶ 66.  MHC's Nollan/Dolan claim is immediately ripe and not subject to the Williamson County requirements.  San Remo Hotel, L.P. v.

---

[5] MHC has also asserted a procedural due process claim, which the City contends is unripe as well.  In its opposition, MHC implies its procedural due process claim is subject to Williamson County.  In any event, MHC bears the burden of establishing ripeness, FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990), and it has not done so.

[6] The City argues that MHC's facial claims are barred by the res judicata effect of the judgment in the 2001 Federal Action.  See Def.'s Mot. at 10-11.  However, as MHC highlights, Judge Benitez issued alternate rulings in the 2001 Federal Action: that MHC's facial claims were barred by the statute of limitations, and that they were moot because the California Superior Court had enjoined the enforcement of the ordinance.  See Def.'s RJN, Ex. B.  If the claims were moot, it appears the court would have lacked jurisdiction to issue a ruling "on the merits."  In re Burrell, 415 F.3d 994, 998 (9th Cir. 2005) ("If the controversy is moot, both the trial and appellate courts lack subject matter jurisdiction, and the concomitant power to declare law by deciding the claims on the merits") (internal citations and quotations omitted).  To the extent there is any doubt as to whether MHC's claims are barred by the res judicata effect of the judgment in the 2001 Federal Action, there is no doubt they are barred by the statute of limitations for Section 1983 claims.

[7] The claim is named for two Supreme Court cases, Nollan v. California Coastal Commission, 483 U.S. 825 (1987) and Dolan v. City of Tigard, 512 U.S. 374 (1994).

1    City and County of San Francisco, 545 U.S. 323, 341 n.23 (2005); Yee v. Escondido, 503 U.S.
2    519, 534 (1992).  Though ripe, MHC's Nollan/Dolan claim is subject to the applicable statute of
3    limitations.  In California, the applicable statue of limitations for civil rights actions brought under
4    42 U.S.C. § 1983 is the two-year statute of limitations for personal injury actions.  Hacienda, 353
5    F.3d at 655 n.2; Cal. Civ. Proc. Code § 335.1.  Section 1983 claims which have already expired
6    when the two-year limitations period came into effect on January 1, 2003, however, are subject to
7    California's prior one-year limitations period for personal injury actions.  See, e.g., Equity
8    Lifestyle Props., Inc. v. County of San Luis Obispo, 505 F.3d 860, 869 (9th Cir. 2007).  Whereas
9    state law determines the length of the limitations period, federal law determines when a civil rights
10   claim accrues.  Javor v. Taggart, 98 Cal. App. 4th 795, 803 (Cal. Ct. App. 2002).  Under federal
11   law, the date of accrual is either (1) the date compensation is denied in state courts, or (2) the date
12   the ordinance is passed if resort to state courts is futile.  Hacienda v. Valley Mobile Estates v. City
13   of Morgan Hill, 353 F.3d 651, 655 (9th Cir. 2003); Levald, Inc. v. City of Palm Desert, 998 F.2d
14   680, 688 (9th Cir. 1993).

15          Here, the Court has already determined that compensation has not been denied in state
16   courts, so the statute of limitations for MHC's Nollan/Dolan claim runs from the date the City
17   enacted Original Ordinance 412 at the latest.[8]  The City enacted Original Ordinance 412 in January
18   2001, and MHC did not initiate this action until May 2007, more than six years later.  As a
19   consequence, MHC's claim is barred by the statute of limitations.  The Court therefore
20   **DISMISSES WITH PREJUDICE** MHC's Nollan/Dolan claim.

21          Any other facial taking claim are subject to Williamson County.  However, the final
22   decision requirement does not apply to facial claims, because such claims derive from the
23   ordinance's enactment, not any implementing action on the part of government authorities.
24   Ventura Mobilehome Cmtys. Owners Ass'n v. City of San Buenaventura, 371 F.3d 1046, 1052
25   (9th Cir. 2004); Hacienda, 353 F.3d at 655 (citing Yee v. Escondido, 503 U.S. 519, 534 (1992)).
26   Facial claims are not exempt from the second Williamson County requirement.  Hacienda, 353
27
28          [8] The statute of limitations may have been running even earlier because Ordinance 412 differed insubstantially from the previous version of the ordinance.  See De Anza Properties X, Ltd. v. County of Santa Cruz, 936 F.2d 1084, 1086 (9th Cir. 1991).

1  F.3d at 655.  For the reasons stated above, the Court concludes that MHC has not satisfied the
2  second Williamson County requirement, and therefore MHC's facial taking claims are not ripe.
3  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** MHC's remaining facial
4  challenges to Original Ordinance 412.

### CONCLUSION

For the foregoing reasons, the Court concludes that MHC's Nollan/Dolan claim is barred by the statute of limitations, and the remainder of MHC's takings and due process claims are not ripe.  Accordingly, the Court **GRANTS** Defendant's motion to dismiss and **ORDERS** as follows:

(1) MHC's as applied taking and due process claims are **DISMISSED WITHOUT PREJUDICE**; (2) its Nollan/Dolan takings claim is **DISMISSED WITH PREJUDICE**; and (3) its remaining facial taking and due process claims are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

**DATED:  October 13, 2010**

_____
**IRMA E. GONZALEZ, Chief Judge
United States District Court**